**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| TIA HICKS, Individually and For Others Similarly Situated<br><br>v.<br><br>SSM HEALTH CARE CORPORATION | **Case No.** _____<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. Tia Hicks (Hicks) brings this collective action to recover unpaid wages and other damages from SSM Health Care Corporation (SSM).

2. SSM employed Hicks as one of its Straight Time Workers (defined below).

3. Hicks and the other Straight Time Workers are paid by the hour, while working for SSM.

4. Hicks and the other Straight Time Workers regularly work more than 40 hours a workweek.

5. But Hicks and the other Straight Time Workers are not paid required overtime wages when they worked in excess of 40 hours a workweek for SSM.

6. Instead, SSM misclassifies Hicks and the other Straight Time Workers as independent contractors.

7. And, while working for SSM, Hicks and the other Straight Time Workers are paid the same hourly rate, "straight time," for all hours worked each workday and never paid 1.5 times their regular rates of pay for hours worked in excess of 40 a workweek (straight time for overtime).

1

8. And SSM applies its straight time for overtime pay scheme to Hicks and the other Straight Time Workers regardless of any individualized differences.

9. SSM's straight time for overtime pay scheme violates the Fair Labor Standards Act (FLSA) by depriving Hicks and the other Straight Time Workers of the "time and a half" overtime premium they are owed for hours worked in excess of 40 a workweek.

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. This Court has general personal jurisdiction over SSM because it is a domestic nonprofit corporation.

12. Venue is proper because SSM is headquartered in Saint Louis, Missouri, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Hicks worked for SSM as a Registered Nurse (RN) in its DePaul Hospital in Saint Louis, Missouri .

14. SSM misclassified Hicks as an independent contractor to avoid paying her overtime wages.

15. Instead, Hicks was paid the same hourly rate for all hours worked each workday and was not paid "time and a half" for hours worked in excess of 40 a workweek, under SSM's straight time for overtime pay scheme.

16. Hicks brings this collective action on behalf of herself and all other similarly situated employees who worked for, or on behalf of, SSM who were paid under its straight time for overtime pay scheme.

17. SSM misclassified these employees as independent contractors to avoid paying them required overtime wages when they worked in excess of 40 hours a workweek.

18. Instead, each of these employees were paid the same hourly rate for all hours worked each workday, while working for SSM, including those hours worked over 40 in a workweek, in violation of the FLSA.

19. The putative collective of similarly situated employees is defined as:

> **All hourly individuals who worked for, or on behalf of SSM, who were paid straight time for overtime while working for SSM at any time during the past 3 years (the "Straight Time Workers").**

20. SSM is a domestic nonprofit corporation with its principal place of business in Saint Louis, Missouri.

21. SSM can be served through its registered agent: **C T Corporation System, 120 S Central Ave, Clayton, Missouri 98501**.

## FLSA COVERAGE

22. At all relevant times, SSM was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

23. At all relevant times, SSM was an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

24. At all relevant times, SSM was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as cell phones, computers, medical supplies, and personal protective equipment – that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

25. At all relevant times, SSM has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

26. At all relevant times, the Hicks and the other Straight Time Workers were SSM's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

27. At all relevant times, the Straight Time Workers were engaged in commerce or in the production of goods for commerce.

## FACTS

28. SSM bills itself as a "fully integrated health system . . . [w]ith care delivery sites in Illinois, Missouri, Oklahoma, and Wisconsin."[1]

29. To meet its business objectives, SSM hires employees like Hicks and the other Straight Time Workers.

30. SSM misclassifies them as independent contractors.

31. And Hicks and the other Straight Time Workers are not paid overtime wages for the hours they work in excess of 40 a workweek, while working for SSM.

32. SSM does not hire Hicks and the other Straight Time Workers on a project-by-project basis.

33. Rather, SSM hires and treats Hicks and the other Straight Time Workers just like other, regular employees, albeit on a shift-by-shift basis.

34. Indeed, SSM employs numerous other RNs and similar patient care workers, whom it properly classifies and treats as employees, who perform the same or similar functions as Hicks and the other Straight Time Workers.

35. Despite misclassifying Hicks and the other Straight Time Workers as independent contractors, SSM controls and directs all meaningful aspects of their employment.

---

[1] https://www.ssmhealth.com/resources/about (last visited October 24, 2024).

4

36. SSM controls Hicks' and the other Straight Time Workers' rate and method of pay.

37. SSM controls Hicks' and the other Straight Time Workers' schedules and assignments.

38. SSM controls Hicks' and the other Straight Time Workers' patient care work.

39. Hicks and the other Straight Time Workers work on SSM's premises.

40. SSM requires Hicks and the other Straight Time Workers to follow its policies, procedures, plans, protocols, and specifications.

41. Hicks' and the other Straight Time Workers' work must strictly adhere to the quality and safety standards put in place by SSM.

42. Hicks and the other Straight Time Workers take direction from, receive work assignments from, and are supervised by SSM personnel.

43. Hicks and the other Straight Time Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

44. Indeed, the daily and weekly activities of Hicks and the other Straight Time Workers are largely governed by standardized plans, procedures, and checklists created and implemented by SSM.

45. Virtually every job function is predetermined by SSM, including the tools and equipment used at SSM's medical facilities where Hicks and the other Straight Time Workers work.

46. These tools and equipment utilized by Hicks and the other Straight Time Workers are provided by SSM.

47. SSM likewise dictates Hicks' and the other Straight Time Workers' schedule of work and related work duties.

48. Without the job Hicks and the other Straight Time Workers perform, SSM would not be able to complete its core business objective of providing healthcare to its patients.

5

49. The work Hicks and the other Straight Time Workers perform is therefore an essential and integral part of SSM's core business as a hospital system – providing healthcare to its patients.

50. Hicks and the other Straight Time Workers rely on SSM for work and compensation.

51. Hicks and the other Straight Time Workers have little or no opportunity for profit or loss.

52. Indeed, Hicks' and the other Straight Time Workers' income is limited to the hourly wages (that do not include overtime) they are paid for all hours worked each day and week, while working for SSM.

53. Hicks and the other Straight Time Workers cannot subcontract out the work they are assigned by SSM.

54. Hicks and the other Straight Time Workers do not substantially invest in the tools required to complete their assignments from SSM.

55. Rather, SSM incurs the large-scale business and operating expenses like payroll, marketing, equipment, tools, facilities, and materials.

56. SSM issues Hicks and the other Straight Time Workers ID badges and access codes.

57. SSM maintains control, oversight, and direction of Hicks and the other Straight Time Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

58. In sum, as a matter of economic reality, Hicks and the other Straight Time Workers are SSM's employees.

59. Hicks and the other Straight Time Workers are paid on an hourly basis, while working for SSM.

60. Hicks and the other Straight Time Workers regularly work more than 40 hours a workweek for SSM.

61. But Hicks and the other Straight Time Workers are not paid premium overtime wages, while working for SSM.

62. Instead, Hicks and the other Straight Time Workers are paid the same hourly rate for all hours worked each workday they work for SSM, without receiving overtime compensation.

63. And when Hicks and the other Straight Time Workers work in excess of 40 hours in a workweek for SSM, they are not paid "time and a half" for the hours worked in excess of 40.

64. While exact job titles and job duties may differ, SSM subjects these employees to the same or similar straight time for overtime pay scheme for similar work.

65. For example, Hicks worked for SSM as an RN in and around Saint Louis, Missouri from approximately April 2022 through December 2022.

66. As an RN, Hicks's primary duties included providing direct patient care in SSM's DePaul Hospital's step down and intermediate care units, such as managing post operation treatment for patients who had recently undergone cardiac procedures by monitoring irregular heartbeats, providing insulin drips for diabetic patients, managing blood pressure, administering medications, and generally assisting doctors alongside other nursing staff.

67. SSM misclassified Hicks as an independent contractor to avoid paying her overtime wages.

68. The shifts she worked for SSM were scheduled through an online "app" SSM utilized to secure employees for shifts, called CareRev.

69. Each shift Hicks worked she was paid a single hourly rate (straight time) for each hour she worked for SSM.

70. But Hicks was never paid "time and a half" overtime wages when Hicks worked in excess of 40 hours in a workweek for SSM.

71. Instead, she was paid straight time for overtime, while working for SSM.

7

72. Hicks was SSM's hourly employee.

73. Hicks reported her hours worked to SSM.

74. SSM approved Hicks' hours worked each workday and workweek.

75. SSM's records reflect the hours Hicks worked each week.

76. Hicks regularly worked more than 40 hours a workweek while employed by SSM.

77. But despite knowing Hicks regularly worked overtime for SSM, she was not paid overtime wages for the hours she worked over 40 in a workweek.

78. Instead, she was paid under SSM's straight time for overtime pay scheme.

79. For example, during the week of October 23 to 29, 2022, Hicks worked 69.06 hours "on the clock," but she was not paid overtime for the hours she worked in excess of 40 that workweek, and instead paid approximately $89.97 an hour for all hours worked:

| October 25 | SSM STL DePaul Health Center - RNs Oct 23 2022 | 14.9 hours | $1,376.76 |
| --- | --- | --- | --- |
| October 28 | SSM STL DePaul Health Center - RNs Oct 24 2022 | 13.53 hours | $1,193.64 |

4

| October 28 | SSM STL DePaul Health Center - RNs Oct 26 2022 | 13.15 hours | $1,159.83 |
| --- | --- | --- | --- |
| November 1 | SSM STL DePaul Health Center - RNs Oct 27 2022 | 13.5 hours | $1,190.70 |
| November 1 | SSM STL DePaul Health Center - RNs Oct 28 2022 | 13.98 hours | $1,292.06 |

80. And on October 27, 2022, when Hicks worked 13.5 overtime hours for SSM, she was paid $88.20 an hour – less than her $89.97 regular rate of pay that workweek:

9

> **SSM STL DePaul Health Center - RNs**
>
> 6 North
>
> Thursday, Oct 27, 2022 — 1900 to 0730
>
> $88.20/hr — $1058.40
>
> You claimed this shift
>
> ⚠ **You must also log your hours in Workday**
>
> To receive payment for shifts worked at this hospital, you must also log your hours and cost center in Workday.

81. Under SSM's straight time for overtime pay scheme, Hicks did not receive the required "time and a half" overtime premium for the hours she worked over 40 a workweek while working for SSM, in violation of the FLSA.

82. The other Straight Time Workers are paid according to the same straight time for overtime pay scheme that SSM imposed on Hicks.

83. Like Hicks, the other Straight Time Workers are paid on an hourly basis, while working for SSM.

84. Like Hicks, SSM requires the other Straight Time Workers to report their hours worked.

85. And SSM approves the other Straight Time Workers' hours.

86. Thus, just as SSM maintains records of the hours Hicks worked, it also maintains records of the hours the other Straight Time Workers work each week.

87. SSM's records show the Straight Time Workers (like Hicks) regularly work more than 40 hours a workweek.

10

88. Every Straight Time Worker worked more than 40 hours in at least one workweek during the relevant period.

89. Despite knowing the other Straight Time Workers regularly worked overtime, they are not paid premium overtime wages, while working at SSM.

90. Hicks and the other Straight Time Workers were never paid on a "salary basis," while working for SSM.

91. Because Hicks and the other Straight Time Workers were never paid on a "salary basis," while working for SSM, they are all non-exempt employees entitled to overtime wages.

92. But Hicks and the other Straight Time Workers are not paid premium overtime wages when they work more than 40 hours in a workweek for SSM.

93. Instead, they are paid under SSM's uniform, illegal straight time for overtime pay scheme, in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

94. Hicks brings her claims as a collective action on behalf of herself and all others similarly situated.

95. The Straight Time Workers were victimized by SSM's straight time for overtime pay scheme, which is in willful violation of the FLSA.

96. Other Straight Time Workers worked with Hicks and indicated they were paid in the same manner, performed similar work, and were subject to SSM's same straight time for overtime pay scheme.

97. Based on her experiences with SSM, Hicks is aware SSM's straight time for overtime pay scheme was imposed on the other Straight Time Workers.

98. The Straight Time Workers are similarly situated in the most relevant respects.

99. The Straight Time Workers were all subject to SSM's straight time for overtime pay scheme that deprived them of required overtime wages for all hours worked in excess of 40 a workweek.

100. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime.

101. Specific job titles or precise job locations of the Straight Time Workers do not prevent collective treatment.

102. Rather, the Straight Time Workers are held together by SSM's straight time for overtime pay scheme that systematically deprived them of overtime wages for all hours worked in excess of 40 a workweek.

103. The failure to pay overtime compensation for all overtime hours worked by the Straight Time Workers, as required by the FLSA, results from generally applicable, systematic policies, and practices imposed by SSM, which are not dependent on the personal circumstances of the Straight Time Workers.

104. The Straight Time Workers are similarly denied overtime wages when they work more than 40 hours in a week.

105. The back wages owed to Hicks and the other Straight Time Workers can be calculated using the same formula applied to the same SSM records.

106. Hicks's experiences are therefore typical of the experiences of the other Straight Time Workers.

107. Hicks has no interest contrary to, or in conflict with, the other Straight Time Workers.

108. Like each Straight Time Worker, Hicks has an interest in obtaining the unpaid wages owed to them under the FLSA.

109. Hicks and her counsel will fairly and adequately protect the interests of the other Straight Time Workers.

110. Hicks retained counsel with significant experience in complex collective action litigation.

111. Absent this collective action, many Straight Time Workers likely will not obtain redress for their injuries, and SSM will reap the unjust benefits of violating federal law.

112. Further, even if some of the Straight Time Workers could afford individual litigation against SSM, it would be unduly burdensome to the judicial system.

113. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Straight Time Workers and provide for judicial consistency.

114. The questions of law and fact that are common to each Straight Time Worker predominate over any questions affecting solely the individual members.

115. Among the common questions of law and fact are:

    a. Whether SSM misclassified Hicks and the other Straight Time Workers as independent contractors;

    b. Whether SSM misclassified Hicks and the other Straight Time Workers as exempt;

    c. Whether SSM uniformly imposed its straight time for overtime pay scheme on the Straight Time Workers;

    d. Whether Hicks and the other Straight Time Workers failed to receive overtime wages for all hours worked in excess of 40 hours a workweek, while working for SSM, in violation of the FLSA;

    e.  Whether SSM's decision not to pay Hicks and the other Straight Time Workers overtime wages for all overtime hours worked was made in good faith; and

    f.  Whether SSM's violations were willful?

  116. Hicks and the other Straight Time Workers sustained damages arising out of SSM's straight time for overtime pay scheme.

  117. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SSM's records, and there is no detraction from the common nucleus of liability facts.

  118. Therefore, the issue of damages does not preclude collective treatment.

  119. Hicks knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

  120. SSM is liable under the FLSA for failing to pay overtime to Hicks and the other Straight Time Workers for all overtime hours worked.

  121. Consistent with SSM's straight time for overtime pay scheme, Hicks and the other Straight Time Workers are not paid overtime wages for all overtime hours worked.

  122. As part of its regular business practices, SSM intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Hicks and the Straight Time Workers.

  123. There are many similarly situated Straight Time Workers who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

  124. The similarly situated Straight Time Workers are known to SSM, are readily identifiable, and can be located through SSM's business and personnel records.

## SSM's Violations Were Willful

125. SSM knew it controlled Hicks' and the other Straight Time Workers' rates of pay.

126. SSM knew it controlled Hicks' and the other Straight Time Workers' method of pay.

127. SSM knew it controlled Hicks' and the other Straight Time Workers' work schedules.

128. SSM knew it prohibited Hicks and the other Straight Time Workers from straying from SSM's procedures, specifications, and other protocols in performing their job duties.

129. SSM knew it did not require Hicks and the other Straight Time Workers to possess any specialized skillset other than that maintained by all workers in their respective job positions.

130. SSM knew Hicks' and the other Straight Time Workers' work was integral to SSM's core business operation.

131. SSM knew it controlled the day-to-day job duties that Hicks and the other Straight Time Workers performed.

132. And SSM knew that Hicks and the other Straight Time Workers performed these duties it controlled on SSM's premises.

133. SSM knew its investment in the tools and equipment necessary for Hicks and the other Straight Time Workers to perform their jobs relatively outweighed any investment made by these workers by a substantial degree.

134. SSM knew it did not hire Hicks and the other Straight Time Workers to work on a project-by-project basis.

135. SSM knew Hicks and the other Straight Time Workers relied on it for work and compensation.

136. SSM knew it controlled Hicks' and the other Straight Time Workers' opportunity for profit or loss.

137. Indeed, SSM knew Hicks' and the other Straight Time Workers' opportunity for profit or loss was minimal and their income was limited to their hourly compensation (which did not include overtime).

138. Thus, SSM knew, should have known, or recklessly disregarded whether, as a matter of economic reality under federal law, Hicks and the other Straight Time Workers were SSM's employees.

139. Nonetheless, SSM misclassified Hicks and the other Straight Time Workers as independent contractors and refused to pay them overtime wages.

140. SSM's misclassification of Hicks and the other Straight Time Workers as independent contractors was designed to mask its violation of federal law (while also itself being a violation of federal law).

141. SSM's misclassification of Hicks and the other Straight Time Workers as independent contractors was neither reasonable, nor was its decision to misclassify Hicks and the other Straight Time Workers as independent contractors made in good faith.

142. SSM knew it was subject to the FLSA's overtime provisions.

143. SSM knew the FLSA required it to pay non-exempt employees, including Hicks and the other Straight Time Workers, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

144. SSM knew Hicks and each Straight Time Worker worked more than 40 hours in at least one workweek during relevant period because it required these workers to report their "on the clock" hours worked to SSM.

145. SSM knew Hicks and the other Straight Time Workers were its hourly employees.

146. SSM knew Hicks and the other Straight Time Workers were paid by the hour, while working for SSM.

147. SSM knew Hicks and the other Straight Time Workers were paid straight time for overtime, while working for SSM.

148. SSM knew Hicks and the other Straight Time Workers were not paid on a "salary basis," while working for SSM.

149. SSM knew it did not pay Hicks and the other Straight Time Workers any guaranteed sum on a weekly or less frequent basis that was not subject to reduction based on the quantity or quality of work.

150. Thus, SSM knew its straight time for overtime pay scheme did not satisfy the "salary basis" test.

151. Nonetheless, SSM uniformly misclassified Hicks and the other Straight Time Workers as exempt employees and they were not paid overtime wages.

152. SSM's decision to misclassify Hicks and the other Straight Time Workers as exempt was neither reasonable, nor was it made in good faith.

153. SSM's failure to pay Hicks and its other Straight Time Workers overtime wages was neither reasonable, nor was its decision not to pay these non-exempt employees overtime wages made in good faith.

154. SSM knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA.

155. SSM knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that deprived Hicks and the other Straight Time Workers of premium overtime wages in violation of the FLSA.

## CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

156. SSM violated the FLSA by employing non-exempt employees (Hicks and the other Straight Time Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates of at least 1.5 times their regular rates of pay for the hours they worked in excess of 40 a workweek.

157. SSM's unlawful conduct harmed the Straight Time Workers by depriving them of the overtime wages they are owed.

158. Accordingly, SSM owes the Straight Time Workers the difference between the rate actually paid and the required overtime rate for all hours worked in excess of 40 a workweek.

159. Because SSM knew or showed reckless disregard for whether its straight time for overtime pay scheme violated the FLSA, SSM owes these wages for at least the last 3 years.

160. SSM is also liable to the Straight Time Workers for an additional amount equal to all their unpaid wages as liquidated damages.

161. Finally, the Straight Time Workers are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

162. Hicks demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Hicks, individually and on behalf of the other Straight Time Workers, seeks the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Straight Time Workers allowing them to join this action by filing their written consent;

b. An Order pursuant to Section 16(b) of the FLSA finding SSM liable for unpaid back wages due to Hicks and the other Straight Time Workers, plus liquidated damages in an amount equal to their unpaid wages;

c. A Judgment against SSM awarding Hicks and the other Straight Time Workers all their unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d. An Order awarding attorney's fees, costs, and expenses;

e. Pre- and post-judgment interest at the highest applicable rates; and

f. Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: October 28, 2024 | Respectfully submitted,<br><br>**ENGELMEYER & PEZZANI, LLC**<br><br>By: */s/ Anthony M. Pezzani*<br>Tony Pezzani, Bar No. 52900MO<br>*tony@epfirm.com*<br>13321 N. Outer Forty Road, Suite 300<br>Chesterfield, MO 63017<br>(636) 532-9933 Phone<br>(314) 448-4320 Facsimile<br><br>Michael A. Josephson*<br>TX Bar No. 24014780<br>Andrew W. Dunlap*<br>TX Bar No. 24078444<br>**JOSEPHSON DUNLAP, LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>Phone: (713) 352-1100<br>Fax:     (713) 352-3300<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>Richard J. (Rex) Burch*<br>TX Bar No. 24001807<br>**BRUCKNER BURCH, PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>Phone: (713) 877-8788<br>Fax:     (713) 877-8065<br>rburch@brucknerburch.com<br><br>*\*Pro hac vice applications forthcoming*<br><br>**ATTORNEYS FOR HICKS &**<br>**THE STRAIGHT TIME WORKERS** |